# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FAREED N. HAYAT, <u>et al.</u>     :
                                  :

v.                                    :     Civil No. WMN-08-3029
                                  :

JEFFREY B. FAIRELY, <u>et al.</u>  :

## MEMORANDUM

Plaintiffs Fareed Hayat, Roderick Hyatt, and Myron Crosby initiated this civil rights lawsuit against a number of defendants including: City of Cumberland, Maryland Police Department (CPD); Jeffrey B. Fairley, former police officer, CPD; Charles H. Hinnant, Chief, CPD; Allegany County Sheriff's Office (Sheriff's Office); Wade Sibley, former Deputy, Sheriff's Office; David A. Goad, Sheriff, Sheriff's Office; Combined County Criminal Investigation Unit (C3I); State of Maryland; Maryland State Police (MSP); Terrence B. Sheridan, Superintendent, MSP; and several unidentified police officers. The Complaint alleges constitutional violations under 42 U.S.C. §§ 1983, 1985(3), and 1986, violations of the Maryland Declaration of Rights, Articles 24 and 26, as well as several violations of Maryland common law.

All Defendants have now filed motions to dismiss. Paper Nos. 7, 8, 11, 12, 13. The motions are fully briefed. The Court finds no hearing is necessary, Local Rule 105.6, and that the motions will be granted in part and denied in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of an alleged illegal stop of Plaintiffs Fareed Hayat, Roderick Hyatt,[1] and Myron Crosby by officers from the CPD and from the Sheriff's Office.[2]  The facts as viewed in the light most favorable to Plaintiffs are as follows.

On November 16, 2007, Plaintiffs were traveling on their way across the country when they passed Defendant Fairley's unmarked police vehicle on the side of the highway.  Compl. ¶ 21.  Fareed checked the vehicle's speedometer and noted that he was not speeding.  Id.  After Plaintiffs passed his vehicle, Fairley, who at the time worked as a Cumberland Police Officer, pulled onto the highway and followed Plaintiffs.  Id. ¶ 23. Fairley pulled his car along side of Plaintiffs' vehicle and looked into the passenger window, then fell back behind Plaintiffs, turned on his sirens and signaled for Plaintiffs to pull over.  Id.  Plaintiffs attempted to pull over onto the side of the highway on which they were driving, but Fairley, using his bullhorn directed Plaintiffs to exit the highway and pull

---

[1] Hereinafter, Plaintiffs Fareed Hayat and Roderick Hyatt will be referred to by their first names to avoid any confusion caused by the similarity of their last names.

[2] Plaintiffs are all African-Americans and the officers alleged to have been a part of this incident are all white.

into a parking lot approximately four blocks from the highway.
Id. ¶¶ 25-28.

Once Plaintiffs pulled into the parking lot, Fairley
approached Plaintiffs' vehicle while another unidentified
officer stood near the vehicle with his hand on his gun holster.
Id. ¶ 29.  Fairley began questioning Fareed about his
destination and whether Plaintiffs were carrying any drugs.  Id.
¶ 30.  After Fareed answered Fairley's questions and assured
Fairley that Plaintiffs did not have any drugs, Fairley accused
Plaintiffs of driving five miles over the speed limit and
requested identification from Fareed, Roderick and Crosby.[3]  Id.
¶¶ 30-33.  While Fairley returned to his vehicle with the
requested identification, the unidentified officer continued to
stand near Plaintiffs' vehicle with his hand on his gun holster.
Id. ¶ 34.

Shortly thereafter, Sibley – Deputy Sheriff of the
Sheriff's Office and a member of C31 – arrived on the scene with
his K-9 unit along with another unidentified officer.  Id. ¶ 36.
Sibley approached Plaintiffs and directed the canine twice
around the vehicle during which time the dog did not bark,
growl, scratch, sniff, or make any other indication of alert.

---

[3] Plaintiffs also allege that although Fairley demanded to see
identification from Plaintiffs, he did not request proof of
vehicle registration, a routine practice in traffic stops.
Compl. ¶¶ 32-33.

Id. ¶ 37.  Despite the lack of any alert, Sibley told Plaintiffs
that he believed marijuana was inside the car, read Plaintiffs
their Miranda rights and ordered everyone out of the vehicle.
Id. ¶ 38.

According to the Complaint, over the next hour, Sibley,
Fairley, and the unidentified officers (together "Defendant
Officers") subjected Plaintiffs to numerous unjustified
indignities.  First, Defendant Officers ordered Roderick out of
the car and into the freezing temperatures and snow without
allowing him to put on his shoes or coat.[4]  After a pat-down of
Plaintiffs during which no weapons or illegal drugs were found,
Defendant Officers placed their hands inside Roderick's and
Crosby's pockets and even inside Roderick's socks.[5]  At no point
during the entire interaction did any Plaintiff give consent to
be searched.  Id. ¶ 50.

After frisking and searching Plaintiffs, and finding no
weapons or drugs, Defendant Officers persisted in searching all
of Plaintiffs' luggage, located in the trunk of the car.  Id. ¶¶
47, 48.  In doing so, Defendant Officers opened the luggage and

---

[4] Defendant Officers eventually allowed Roderick to retrieve his
coat after he stood outside in the snow for 20 minutes and after
Defendant Officers joked about the freezing temperatures.

[5] After Roderick informed Defendant Officers that he had seven
hundred dollars in his socks because the sweat-pants he was
wearing had no pockets, Defendant Officers seized this cash and
kept it for the entire search and seizure.

threw their contents onto the ground.  Id. ¶ 48.  Again,

Defendant Officers found nothing.  Id. ¶ 48, 55.  Again,

Plaintiffs never consented to the search of their belongings.

Id. ¶ 50.

During the stop, Defendant Officers persistently questioned

Plaintiffs about whether they had any drugs on them or in the

car.  When Fareed attempted to inform Roderick that he had a

right to remain silent, Defendant Officers threatened to charge

Fareed with disturbing the peace and to arrest him.  Id. ¶ 51.

Despite these warnings, Fareed continued to remind Roderick of

his right to silence, and in response, Defendant Officers locked

Fareed in the back of a police vehicle.  Id. ¶ 53.

The Complaint alleges that during the questioning by

Defendant Officers, Sibley told Roderick that the Officers had

found marijuana shake in the vehicle and that it was acceptable

to tell him that Plaintiffs had drugs because Sibley himself

sold drugs.  Id. ¶ 54.  After Roderick informed Sibley that

there were no drugs in the car, Sibley allegedly lied and told

Roderick that the Officers had found drug paraphernalia in the

vehicle.  Id.  Defendant Officers never produced any evidence of

marijuana shake, residue, or drug paraphernalia.  Id. ¶ 55.

As with Roderick, when Sibley questioned Crosby, who was

only 16 years old at the time, he told Crosby that it was okay

5

for Crosby to admit to having marijuana in the vehicle because one of Sibley's fellow police officers sold crack cocaine.  Id. ¶ 57.  Sibley also falsely told Crosby that the Officers had found marijuana in the vehicle.  Id.  Crosby, however, continued to maintain that there was no marijuana in the car and then exercised his right to remain silent.  Id. ¶ 58.  As a result, Sibley locked Crosby in the back of an unmarked police vehicle. Id.

After the search and seizure continued for almost an hour, Fairley finally issued Plaintiffs a warning for driving ten miles over the speed limit and failure to use a proper turn signal when making a right turn.  Id.  When Fareed asked Defendant Officers for their badge numbers, the Officers refused to provide their identification and told Fareed to get back in his vehicle or he would be arrested.  Id. ¶ 60.

In addition to this stop, the Complaint alleges that Fairley and Sibley have conducted numerous traffic stops, primarily pulling over African-American and minority drivers, claiming violations of traffic law, but eventually searching for drugs.  Id. ¶ 66.  In executing these stops, Fairley allegedly always calls for Sibley's canine assistance, despite the fact that CPD has its own canine unit.  Id. ¶ 67.

## II. LEGAL STANDARD

6

To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations" are not required, but a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief" and this "requires more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action[.]"  Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 555 (2007) (internal citations omitted).  In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  A plaintiff must have alleged facts "to raise a right to relief above the speculative level[.]"  Twombley, 550 U.S. at 555. "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 563.

## III. DISCUSSION

A. Combined County Criminal Investigation Unit

To state a claim under § 1983, Plaintiff must allege violations of rights secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a "person" acting under color of state law.[6]   42

U.S.C. § 1983.  C3I argues that because it is not a person

amenable to suit under § 1983, Plaintiffs' constitutional claims

against C3I should be dismissed.

It is beyond dispute that a local governmental unit or

municipality can be sued as a "person" under § 1983.  Monell v.

Dept. of Social Servs., 436 U.S. 659, 690 (1978).  C3I, however,

is not a municipality or local governmental entity.  C3I is

composed of several local, county and state governmental

entities, including the CPD, the Sheriff's Office, and the MSP.

It is a drug task force and "it is well settled that a drug task

force is not a 'person' amenable to suit under § 1983."  Clinton

v. Berkeley County, No. 3:08-10, 2009 WL 35331, at *6 (N.D. W.

Va. Jan. 6, 2009); see also Jackson v. Commonwealth of Virginia,

No. 7:06-306, 2006 WL 1700655, at *1 (W.D. Va. June 16, 2006)

(finding multi-jurisdictional drug task force not a person under

§ 1983).  Thus, the Court will dismiss Plaintiffs'

constitutional claims against C3I.

C3I also argues that it is not an entity amenable to suit

under Maryland state law and points to Bourexis v. Carroll

_____

[6] Sections 1985 and 1986, under which Plaintiffs also assert
claims against C3I, also apply to actions of a "person."
Because the term "person" is defined in the same way under all
three sections, for purposes of simplicity the Court will simply
refer to § 1983 in its discussion.

County Narcotics Task Force, 625 A.2d 391 (Md. Ct. Spec. App. 1993), in support.  In Bourexis, the court pointed to the lack of any evidence in the record regarding the Carroll County Narcotics Task Force's organization, governance, powers, financing, or property and noted that the "only allegation as to [the Task Force's] nature and status . . . is that it is located in Carroll County and is composed of law enforcement officers from various law enforcement agencies who purport to operate under the laws of the State of Maryland."  Id. at 467 (internal quotation marks omitted).  "In short," held the court, "there is nothing to show it is an entity that may be sued."  Id.

The Complaint in this case contains language similar to that in Bourexis in that it describes C3I as a "cooperative effort staffed by law enforcement personnel from various police departments . . . ."  Compl. ¶ 13.  Accordingly, this Court will dismiss the state claims against C3I because Plaintiffs have not made any allegations to show that C3I is an entity that may be sued.

B. Cumberland Defendants

Defendants Fairley, CPD, and the unnamed police officers of the CPD (collectively, "Cumberland Defendants") move for dismissal of Counts II and III and Counts IV through IX[7] of

---

[7] Count IX was mistakenly numbered as Count VII in the Complaint.

Plaintiffs' Complaint.  In Count II, Plaintiffs aver that Fairley and Sibley violated 42 U.S.C. § 1985(3) by engaging in a conspiracy to "deprive minority drivers, particularly African-Americans, of their equal protection rights to be free from unreasonable searches and seizures."  Compl. ¶ 101.  In support of this claim, Plaintiffs point to the alleged actions of Fairley and Sibley during the search and seizure of Plaintiffs on November 16, 2007.  Plaintiffs also allege that CPD engaged in this conspiracy by "promoting a practice of targeting minority drivers and engaging in illegal searches and seizures of their persons and vehicles in hopes of finding narcotics." Id. ¶ 107.

A plaintiff seeking to recover under § 1985(3) must allege and prove the following elements: (1) a conspiracy of two or more persons; (2) who are motivated by a specific class-based, invidiously discriminatory animus to; (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all; (4) which results in injury to the plaintiff as; (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.  Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995).  Moreover, a plaintiff must show "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights."  Id. at 1377.  The Fourth Circuit has

taken a restrictive view of § 1985 claims, rejecting such claims whenever "the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." Id. at 1376.

   As Cumberland Defendants note, the Complaint is devoid of the specific facts necessary to uphold a conspiracy claim under § 1985(3).  Instead, Plaintiffs' conclusively state that "Defendants Fairley and Sibley engaged in a conspiracy of conducting pretextual traffic stops for the sole purpose of performing illegal searches and seizures of Africa-American and other minority drivers' persons and property without any reasonable articulable suspicion."  Compl. ¶ 66; see also id. ¶ 101 ("Defendants Fairley and Sibley have engaged in a conspiracy . . .").

   Paragraph 104 contains the only real factual allegation in support of a conspiracy – i.e., that Sibley routinely responded to Fairley's requests for canine assistance.  Taken in the light most favorable to Plaintiffs, as the Court must, this factual statement is simply not enough to support a claim of conspiracy. As alleged in the Complaint, Sibley was a canine handler for the Sheriff's Office, Id. ¶¶ 11, 35, and it was his job to respond to requests for canine assistance made by fellow police officers working within Allegany County.  That fact, standing alone, does

11

not rise to a "meeting of the minds" as required by the Fourth
Circuit, nor does it even imply that Sibley or Fairley were
motivated by any racially charged animus.

In their Opposition, Plaintiffs attempt to buttress the
allegations in their Complaint by citing to cases that stand for
the legal proposition that circumstantial evidence may be
presented to establish a § 1985(3) conspiracy.  Opp'n at 38-41.
While this proposition may be true, the cases cited by
Plaintiffs warn that "circumstantial evidence has no less weight
than direct evidence <u>so long as</u> it reasonably establishes [the
facts as alleged by Plaintiff]."  <u>Burrell v. Bd. of Trs. of Ga.
Military Coll.</u>, 970 F.2d 785, 788 (11th Cir. 1992) (emphasis
added).

Despite their long discussion on the importantance of
circumstantial evidence in establishing a conspiracy, Plaintiffs
provide no such evidence to support the statements in their
Complaint.  For example, instead of alleging multiple instances
in which Sibley and Fairley worked together to pull over
minorities without reasonable articulable suspicion or probable
cause, Plaintiffs simply state that Defendants Fairley and
Sibley had a "repeated practice" of working together to conduct
illegal searches of minority drivers.  Compl. ¶ 68, 104.  In
fact, the Complaint alleges facts to support only one instance

12

of racial discrimination – the November 16, 2007, stop at issue.
There are no further factual allegations to support any other
incidents of alleged racial profiling.  Such broad, conclusory
statements cannot withstand a motion to dismiss.  See Clark v.
Md. Dep't of Pub. Safety and Corr. Servs., 247 F. Supp. 2d 773,
776 (D. Md. 2001) (dismissing § 1985 conspiracy claims because,
although plaintiff alleged multiple instances of harassment, he
did not allege any facts connecting these instances or showing
that the individual defendants came to an agreement to instigate
these instances of harassment); Talley v. Farrell, 156 F. Supp.
2d 534, 546 (D. Md. 2001) (dismissing § 1985(3) where no facts
alleged that could connect separate instances of alleged
discrimination to show a conspiracy).

In Count III, Plaintiffs allege a claim under 42 U.S.C. §
1986.  A cause of action based upon § 1986 is dependent upon the
existence of a claim under § 1985.  42 U.S.C. § 1986.  Having
determined that Plaintiffs' § 1985 claims against the Cumberland
Defendants fail, the Court will also dismiss Plaintiffs' § 1986
claims.

In Counts IV-IX Plaintiffs allege state constitutional and
common law tort violations.  Under Maryland's Local Government
Tort Claims Act (LGTCA), a plaintiff must give the local
government notice of a claim 180-days from the date of injury to

proceed with a judicial remedy against a local government entity
for state constitutional or common law tort violations.  Md.
Code Ann., Cts. & Jud. Proc. § 5-304(b).  According to the
LGTCA, notice is to be given as follows: "[e]xcept in Anne
Arundel County, Baltimore County, Hartford County, and Prince
George's County, the notice shall be given . . . to the county
commissioner, county council, or corporate authorities of a
defendant local government . . . ."  Id. at § 5-304(c).  Here,
Plaintiffs did not serve notice to the correct party until the
181st day after the alleged injury.  Accordingly, the Cumberland
Defendants urge dismissal of the state claims.

    While it is true that Plaintiffs did not timely comply with
the notice requirement, the Cumberland Defendants' argument
fails because of an exception to the notice requirement.  Under
Md. Code Ann., Cts. & Jud. Proc. § 5-304(d), "notwithstanding
the other provisions of this section, unless the defendant can
affirmatively show that its defense has been prejudiced by lack
of the required notice, upon motion and for good cause shown the
court may entertain the suit even though the required notice was
not given."  The test for good cause shown "is that of ordinary
prudence . . . whether the claimant prosecuted his claim with
that degree of diligence that an ordinarily prudent person would
have exercised under the same or similar circumstances."  Bibum

14

v. Prince George's County, 85 F. Supp. 2d 557, 565 (D. Md. 2000).  While ignorance of the notice requirement is not good cause, excusable neglect or mistake is.  Heron v. Strader, 761 A.2d 56, 64 (Md. 2000).

Plaintiffs served notice on Allegany County's County Attorney on May 9, 2008.  Five days later, on the 180th day after the alleged injury, Plaintiffs received a letter stating that Allegany County had no responsibility for the actions of Cumberland City employees because, although Cumberland is located within Allegany County, it is an incorporated municipality.  Plaintiffs immediately sent notice to Cumberland's Clerk of Courts, which reached her, as noted above, on the 181st day.

Given the intertwined nature of Allegany County and the City of Cumberland, Plaintiffs' mistake in sending the notice to Allegany County's County Attorney falls under the category of excusable neglect or mistake.  For example, applications for Cumberland zoning licenses must be filed with the clerk of the courts for Allegany County.  City of Cumberland Subdivision Regulations, http://www.ci.cumberland.md.us/new_site/index.php/ contents /view/16 (last visited July 23, 2009).  Additionally, Allegany County and the City of Cumberland jointly apply for

15

funds from the Community Development Block.  Allegany County
Board of Commissioners Meeting Minutes, http://gov.allconet.org/
bcc/minutes.htm (last visit July 23, 2009).  Moreover, Defendant
C3I is made up of officers from both Allegany County and the
City of Cumberland and governed by an advisory board headed by
the Sheriff of the Allegany County Sheriff's Office.

      The cases in which Maryland courts have declined to find
good cause differ substantially from the one at bar.  For
example, in Ransom v. Leopold, a case in which the plaintiffs
claimed injuries occurring when officers came to their home, the
plaintiffs provided notice to the wrong county and explained
this mistake only by stating that a law clerk was confused about
which county the injury occurred in.  962 A.2d 1025, 1035 (Md.
Ct. Spec. App. 2008).  Explaining their decision declining to
find good cause, the Maryland Court of Special Appeals noted

> [t]he appellants of course would know what county they
> live in, and their counsel would have (or certainly
> should have) their address. The letter allegedly
> mailed to Prince George's County [the wrong county] on
> May 25, 2007, had a blank signature line.  If it were
> signed, it should have been signed by counsel for
> appellants, as their representative, and not by a law
> clerk, who would be under the supervision of counsel
> in any event.  Moreover, Edgewater is in eastern Anne
> Arundel County, not close to Prince George's County.
> (We note that the May 25, 2007 letter does not state
> the place of the injury as required by CJ section 5-
> 304(c)(3)).

Id.  Similarly, in Rios v. Montgomery County, the Maryland Court

of Special Appeals found an absence of good cause when a mother

failed to file notice of a malpractice claim until ten years

after her son was born with alleged injuries, claiming she had

no knowledge or reason to know the physician was a county

employee.  852 A.2d 1005, 106 (Md. Ct. Spec. App. 2004).

Once the plaintiff has met the burden of establishing good

cause to waive the notice requirement, the defendant must

affirmatively show that its defense has been prejudiced by

untimely notice.  Md. Code Ann., Cts. & Jud. Proc. § 5-304(d).

Nowhere in their Motion or their Reply do Cumberland Defendants

explain how receiving notice of the Complaint one day late has

prejudiced their case.  Absent evidence of any such prejudice,

the Court will allow Plaintiffs' state claims to go forward.

  C. State Defendants

          a. State of Maryland and the Maryland State Police

   Defendants State of Maryland and the MSP move to dismiss

Plaintiffs' claims against them, alleging that they are entitled

to immunity under the Eleventh Amendment.  The Eleventh

Amendment provides "[t]he Judicial power of the United States

shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by

Citizens of another State, or by Citizens or Subjects of any

17

Foreign State."  "The ultimate guarantee of the Eleventh
Amendment is that nonconsenting States may not be sued by
private individuals in federal court."  Bd. of Trs. of Univ. of
Alabama v. Garrett, 531 U.S. 356, 363 (2001).  "A State's
constitutional interest in immunity encompasses not merely
whether it may be sued, but where it may be sued."  Pennhurst
State School and Hosp. v. Halderman, 465 U.S. 89, 99 (1984).
For this reason, the Supreme Court "consistently has held that a
State's waiver of sovereign immunity in its own courts is not a
waiver of the Eleventh Amendment immunity in federal courts."
Id. at 99 n.9 (internal quotations omitted).  Consequently,
Eleventh Amendment immunity is a limitation on federal courts'
jurisdiction.  See Wisconsin Dept. of Corrs. v. Schact, 524 U.S.
381, 392 ("A State's proper assertion of an Eleventh Amendment
bar [even] after removal means that the federal court cannot
hear the barred claim.").

     There are three exceptions to a State's sovereign immunity
under the Eleventh Amendment.  First, a State may waive its
immunity and consent to suit in federal court.  Green v.
Mansour, 474 U.S. 64, 68 (1985).  Second, the Eleventh Amendment
does not bar a suit against a state official seeking prospective
relief to end a continuing violation of federal law.  Ex Parte
Young, 209 U.S. 123, 167 (1908).  Finally, Congress may validly

18

abrogate the States' Eleventh Amendment immunity.  <u>Seminole</u>
<u>Tribe of Florida v. Florida</u>, 517 U.S. 44, 55 (1996).

As the State of Maryland notes, and Plaintiffs do not
challenge, the second and third exceptions clearly do not apply
in this case.  As to the first exception, the State of Maryland
has not waived its Eleventh Amendment immunity.  The State of
Maryland has expressly waived it sovereign immunity only in
State courts.  <u>See</u> Md. Code Ann., State Gov't § 12-104(a)(1)
("[T]he immunity of the State and of its units is waived as to a
tort action, <u>in a court of the State</u>, to the extent provided
under paragraph (2) of this subsection.") (emphasis added).
Furthermore, the State Government Article does not operate to
"waive any right or defense of the State or its units,
officials, or employees in an action in a court of the United
States or any other state, including any defense that is
available under the 11th Amendment to the United States
Constitution."  <u>Id.</u> at § 12-103(2).  Accordingly, neither the
State of Maryland, nor any of its agencies can be sued in this
Court, and the claims against the State of Maryland and the MSP
will be dismissed.

> b. Col. Terrence B. Sheridan

Plaintiffs implicate Defendant Sheridan for violations of §
1983 based on his supervisory role as Superintendent and head of

the MSP.  Under Fourth Circuit precedent, "[t]he principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).  Such liability is not premised upon respondeat superior as Sheridan asserts, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (internal quotations omitted).  This issue is normally one of fact, not law.  Id. (internal citations omitted).

In order to establish supervisory liability under § 1983, a plaintiff must show three elements: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Randall v. Prince George's County</u>, 302 F.3d 188, 206 (4th Cir. 2002) (internal citations omitted).

In this case, Sheridan contends that Plaintiffs' Complaint is defective because "there is not a single word of evidence that the conduct of . . . Sheridan posed a 'pervasive and unreasonable risk of constitutional injury' . . ." and that Plaintiffs have "alleged only a single incident with insufficient attendant constitutional injury." State Defs.' Mot. at 6. This contention, however, misconstrues the standard which requires only a showing that the defendant's "<u>subordinate</u> was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like plaintiff." <u>Shaw</u>, 13 F.3d at 799 (emphasis added). Thus, the Complaint cannot be deficient for failing to plead that <u>Sheridan's</u> conduct posed such a risk.

Moreover, Plaintiffs have alleged that "Defendant Fairley's illegal searches of minority drivers have resulted in numerous successful Motions to Suppress." Compl. ¶70. As such, Plaintiffs have alleged that Sheridan was at least on constructive notice of actions taken by Fairley that posed an unreasonable risk of constitutional injury. <u>See</u> <u>Shaw</u>, 13 F.3d at 800 (finding that knowledge of at least three prior incidents of constitutional violations sufficiently demonstrated that the

supervisor possessed actual or constructive knowledge that his subordinate's actions posed a risk of constitutional injury). Though this allegation may not prove enough at a later stage of litigation, it is certainly enough to satisfy the "simplified pleading standard" of Fed. R. Civ. P. 8(a)(2) and survive a motion to dismiss. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S 5-6, 513 (2002).

Sheridan also requests that the Court dismiss Plaintiffs' state claims against him because he is entitled to public official immunity. For public official immunity to apply:

> (1) the actor must be a public official, rather than a mere government employee or agent; (2) the conduct must have occurred while the actor was performing discretionary, as opposed to ministerial, acts; and (3) the actor must have performed the relevant acts within the scope of his official duties. If those three conditions are met, the public official enjoys qualified immunity in the absence of "malice."

<u>Baltimore Police Dep't v. Cherkes</u>, 780 A.2d 410, 437 (2001) (internal quotations and citations omitted). "The actual malice needed to defeat official immunity requires an act . . . with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiffs." <u>Williams v. Mayor & City Council of Baltimore</u>, 753 A.2d 41, 57 n.16 (2000) (internal quotations omitted).

There is no dispute that in this case the three conditions for public official immunity have been met. See id. ("It is clear that policemen are 'public officials' . . . and that when they are within the scope of their law enforcement function they are clearly acting in a discretionary capacity.") (internal quotations omitted).  Additionally, because Plaintiffs have not adduced facts or allegations which would support an inference that any conduct by Sheridan was "motivated by ill will, by an improper motive, [] by an affirmative intent to injure," or "wanton and reckless disregard for the safety of others," Sheridan is protected by public official immunity and this Court will dismiss the state law claims against him.

   D. Allegany County Sheriff's Office

   Under the Federal Rules of Civil Procedure, a plaintiff may bring suit only against an entity with the capacity to be sued. Fed. R. Civ. P. 17(b).  The determination of capacity is made in accordance with the laws under which the entity is organized. Id.  It is undisputed that under Maryland law, the Allegany County Sheriff's Office is not a legal entity capable of being sued.  See Boyer v. State, 594 A.2d 121, 128 n.9 (Md. 1991) ("Neither the Constitution nor any other provision of law . . . creates a government agency known as the 'Sheriff's Department.'"); Tani v. St. Mary's County, No. 07-1924, 2008 WL

1990772, at *1 (D. Md. March 31, 2008) (dismissing St. Mary's
County Sheriff's Department because it is not an independent
governmental entity capable of being sued) (internal citations
omitted).  Accordingly, the claims against the Allegany County
Sheriff's Office will be dismissed.

   E. Sheriff Defendants

    Like the State of Maryland and the MSP, Defendants Goad and
Sibley (collectively, the "Sheriff Defendants") assert that all
claims against them are barred by the Eleventh Amendment.  See
supra Section C.a. (discussing Eleventh Amendment standard and
exceptions).  In opposition, Plaintiffs assert that the Sheriff
Defendants are not state actors for the purposes of Eleventh
Amendment immunity.  Plaintiffs rely on Ram Ditta v. Md. Nat'l
Capital Park and Planning Comm'n, 822 F.2d 456 (4th Cir. 1987),
to support this claim.  Ram Ditta supplies a four-factor test
used to determine whether a person is a state actor for the
purpose of Eleventh Amendment immunity.  Id. at 457-58.  Despite
Plaintiffs' attempts to fit Sheriff Defendants into these four
factors, this Court must rule in accordance with the long line
of cases from this circuit finding county sheriffs, as well as
deputy sheriffs, to be state actors under the Eleventh
Amendment.  See, e.g., Rossignol v. Voorhaar, 321 F. Supp. 2d
642, 650-51 (D. Md. 2004) (determining that a St. Mary's County

24

Sheriff and his deputies are state officials and therefore enjoy Eleventh Amendment immunity); McGrath-Malott v. Maryland, No. 06-879, 2007 WL 609909, at *4 (D. Md. Fed. 23, 2007) ("The role of a sheriff as a State constitutional officer whose duties are subject to control by the General Assembly leads us to the conclusion that sheriffs are State rather than local government employees.  Because a deputy sheriff functions as the alter ego of the sheriff, and exercises the same authority, we reach the same conclusion with respect to deputy sheriffs.") (internal quotations and citations omitted).

Plaintiffs next argue that even if this Court finds that the Sheriff Defendants are state actors, they are subject to suit in their official capacities for injunctive relief under the doctrine of Ex Parte Young, 209 U.S. 123 (1908).  Under the Ex Parte Young doctrine, prospective relief against a state official in his official capacity to prevent future federal constitutional or federal statutory violations is not barred by the Eleventh Amendment.  Id.  The Supreme Court reasoned that a state official who violated federal law is "stripped of his official or representative character" and, therefore, did not act for the state, but as an individual.  Id. at 160.  The Ex Parte Young doctrine "permits federal courts to enjoin state officials to conform their conduct to requirements of federal

25

law, notwithstanding a direct and substantial impact on the state treasury." <u>Milliken v. Bradley</u>, 433 U.S. 267, 289 (1977).

To determine whether a plaintiff has alleged a proper <u>Ex Parte Young</u> claim, the court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002) (internal quotations omitted).  In this case, the Complaint clearly meets the requirements in <u>Ex Parte Young</u> as to the alleged § 1983 violations by Goad and Sibley when acting in their official capacities.  Plaintiffs' § 1983 claims against Sibley in his individual capacity are also protected so long as Plaintiffs seek relief from Sibley personally, and not from the state treasury.  <u>See</u> <u>Alden v. Maine</u>, 527 U.S. 706, 757 (1999) ("Even a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally.").

Sheriff Defendants also contend that the supervisory § 1983 claims against Goad should be dismissed for failure to state a claim.  For the same reasons discussed above with regard to

Defendant Sheridan, supra Section C.b., however, this Court
finds that Plaintiffs have sufficiently alleged such a claim.

Next, Sheriff Defendants attempt to assert state sovereign
immunity to protect Goad and Sibley from liability for the
Plaintiffs' state common law actions.  In support of this
contention, Sheriff Defendants claim that Plaintiffs did not
comply with the service requirements of the LGTCA, and thus,
"the State's immunity remains intact."  The LGTCA, however, only
immunizes State personnel for negligent acts committed within
the scope of employment and without malice or gross negligence.
Ford v. Baltimore City Sheriff's Office, 814 A.2d 127, 134 (Md.
Ct. Spec. App. 2002); see also Lee v. Cline, 863 A.2d 297, 307
(Md. 2004) ("the purpose of [LGTCA] immunity is to insulate
state employees generally from tort liability if their actions
are within the scope of employment and without malice or gross
negligence").  In the context of assessing immunity under the
LGTCA, "malice" is defined as "behavior characterized by evil or
wrongful motive to injure, knowing and deliberate wrongdoing,
ill-will or fraud."  Newell v. Runnels, 967 A.2d 729, 763 (Md.
2009) (internal quotations omitted).

In this case, Plaintiffs have alleged malice on the part of
Sibley.  Specifically, Plaintiffs assert that Sibley, along with
the other Defendant Officers, ordered Roderick out of the car

and into the freezing cold temperatures without allowing him to put his coat on.  Compl. ¶ 42.  Instead of listening to Roderick's pleas to retrieve his coat, Sibley and the other officers joked about the freezing temperatures.  Such behavior clearly rises to the level of "knowing and deliberate wrongdoing" and "ill-will."  Thus, Sibley is not protected by the sovereign immunity.  Plaintiffs, however, have not alleged malice on the part of Goad, and the state common law claims against him will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions will be denied in part and granted in part.  A separate order will issue.

_____/s/_____
William M. Nickerson
United States District Judge

Dated: August 5, 2009